We will hear argument next in Case No. 23-2374, Accorda Therapeutics v. Alkermes. Ask how to pronounce it, please. Good morning, Your Honors. Garrett Beeney on behalf of the Appellant, Accorda Therapeutics. With the Court's permission, as the Court is aware, the parties have briefed a number of issues. What I'd like to address in the time for oral argument today are really three issues. Very briefly, if I may, why this Court has jurisdiction to hear this appeal. Might not be that brief, but go on. Second, why manifest disregard was engaged in by the Tribunal by allowing Alkermes to retain loyalties that were illegally paid under federal law. And then finally, why the manifest disregard standard allows this Court to modify the Tribunal award. But before getting to jurisdiction, if I may, it may be useful just to remind ourselves the tenure in which this case comes to the Court. Because there are five material issues that were decided that the parties sought confirmation, received confirmation, and are not in dispute at all. And those are that the collection of all post-expiration royalties are unlawful per se under federal law. All royalties. Second, that the agreements at issue here really constitute a single agreement. And all of the provisions of both agreements, or one agreement, to the extent they were considered the same, are unenforceable. Third, that brought- Can we just get to the jurisdiction? No argument. Absolutely. I'm a little concerned about the theory here because I'm a little worried that it opens up to basically if the underlying case involves an issue of patent law, then it comes to us. And that rule can't be that broad, right? I think the rule of Berlant and Kimball that we would submit to the Court is- No, no, no. Answer my question. I'm sorry. Maybe I misunderstood. My question is, I want to know how to cabin us asserting jurisdiction in this case to some manageable rule that doesn't suddenly become, if there's an issue of patent law anywhere in the case below, it comes to us. And even if it's not a patent case, it's not a compulsory patent claim, and the like. And I think that broad rule, at least we have found in Walker- I hate to bring Walker Process back, but we have found in Walker Process claims that if it's a pure Walker Process antitrust claim, which necessarily involves patent law to some extent because it's fraud on the Patent Office, nevertheless, it goes to the regional circuit. So it can't be that broad rule that just having a tangential patent issue can bring it here. So why isn't that the case here? Because I think the issue with this case, Judge Hughes, strikes at the heart of the duration of the patent as enacted by Congress. And that is the whole underpinning of Berlant and Kimball. The question raised here is the extension- Isn't that the same in these Walker Process cases, though? The whole argument is somebody has committed fraud on the Patent Office to garner the market. And so they have to show- Well, maybe they don't have to show. I think maybe our case law- And maybe I'm answering your question for you. But in those cases, isn't that part of the Walker Process claim? I think the Walker Process claim, as I understand it, is so intertwined with antitrust law. That is not by any means the case here. This is a pure question of patent law, an important question of patent law. And that is, how do you effectuate the rule of Berlant and Kimball? Okay, but that's not helping me. Because even if I take that it's an important question of patent law, does that necessarily mean it comes here if it's not some kind of compulsory counterclaim or somehow the basis for the case? Because I'm also struggling with the sense that if we rule for you on jurisdiction, that any time an arbitration involves patent law, and there's a decision on that, either confirming or not confirming by the district court, it's going to come to us. And that seems to me not- We haven't decided that, but I'm not sure it's right. I'm not sure it's wrong. I don't think that's the proposition that we would present to your honors, that that would give this court jurisdiction. But here, the block- So I guess I was thinking about an issue that's come up under the Domestic Arbitration Act recently, culminating in a 2022 Supreme Court decision. I think that the basic rule is, with the exception of coming to compel an arbitration under Section 4, the other issues, the Section 9 through 11, confirmation, terminate, modification, or vacater, are judged for jurisdictional purposes. And this is real history court jurisdictional purposes. It's not directly applicable on what the federal court case-initiating or the case-initiating pleading is, not looking through to what the arbitration is about. So I would have thought that in this case, that the case-initiating pleading is what you filed in Southern District of New York. It was a pure federal patent law claim. It says, federal patent law, as understood in Brulat, makes what the panel, the arbitration panel, did unlawful. I think that's the entire basis of this court's jurisdiction, as well as the fact that the decision allows different state laws to have an impact on different remedies for a federal law violation, a federal patent law violation. Right, but the entire- Right, we're just talking about jurisdiction, whether that may be an incorrect assertion, right? That's the merits, whether Brulat really reaches that far. But just for jurisdictional purposes, is it enough that your case-initiating filing, namely a petition with the Southern District of New York to modify and confirm pieces of the arbitration, was at least in part directly relying on federal law? Yes, Judge Carranto, and I believe- Patent law, sorry. Christianson and Gunn established that principle. So almost all the- there are many cases that I think that have been discussed in the briefs where regional circuits do Brulat, with one exception that, at least in my understanding, they all involve a situation where Brulat comes up as a defense or a counterclaim, and not a compulsory counterclaim. So 1295 for us just doesn't apply. The one exception is one of the cases submitted on supplemental authority, this recent Seventh Circuit Zimmer case, which, as far as I can tell, was a case for these purposes, namely which court of appeals gets jurisdiction of a real, what I think the Supreme Court has called, a drive-by jurisdictional ruling. That is, there was no discussion of why the Seventh Circuit had jurisdiction, as opposed to us. The opening brief said, this is a 1332 diversity case, and so let's go ahead without even addressing whether this was a 1291 or 1295 appeal. But everything else seems like Brulat is always in a situation, in a circumstance, different from this, where that is- this is one in which the case-initiating cause of action raises a federal patent law claim. But one reason I mention that is this. So in our post-gun discussion, when we think applying the guns analysis for whether the question is important, one thing we've said is, is it important that we establish some uniformity on a patent law? That's not possible with respect to Brulat, is it? Precisely because it practically always comes up in a 1291 situation. Well, I would say a couple of things in response to that, Judge Toronto. Certainly, not all Brulat questions come to this court, and in fact, many Brulat questions, and I believe Zimmer is one of these cases, revolve around contract law and whether, in fact, the contract requires post-exploration payments. But the revolve around is not really the 1295 standard, because 1295 applies when the case in the district court, even in part, relied on patent law. And Zimmer was one where ultimately the decision was the contract actually isn't subject to Brulat, but that's not- you don't decide whether 1295 applies based on how the district court decision came out, just what was pled. No, but I think the Christiansen gun and the subsequent cases talk about a substantial question of patent law important to the patent system as a whole, and that's this case. But how do you- how would we establish uniformity on the question whether Brulat itself requires disgorgement of unprotested payments that were, in fact, unlawful at the time? I think from looking at the language of Brulat and Kimball, and this is our manifest disregard argument, in effect, that if you read that language, you cannot come to any other conclusion that Brulat and Kimball established the principle that any illegally paid royalties under federal law must be restored, and that is for all royalties, not part of them. State law can't interfere, contract law can't interfere, and that's the important rule that you take from Brulat and Kimball, and it was manifest disregard for the tribunal to ignore that. And it was also error for the district court to claim that Brulat and Kimball don't set that test, and that Brulat and Kimball don't set guidance. And another reason why I think this court has jurisdiction is because, you know, the enabling statute for this court was to establish nationwide law on patents, and the decisions below allow for there to be this patchwork of decisions about what's the remedy in order to effectuate the federal law that was established by Brulat and Kimball. I'm wondering how far that goes. If I come back to a question Judge Hughes asked you in light of a response you gave to Judge Toronto, is the implication that we would have jurisdiction over any appeal from a, you know, petition to confirm or modify an arbitration decision if the underlying arbitration decision was a patent case? We can posit that the petition in district court would, on its face, talk about patent issues. Is the implication that all of those appeals would come exclusively to us? I think, you know, Judge Stark, it has to be a substantial question important to the system as a whole, and there may be some that are not. This question is, and that establishes jurisdiction in this court. I guess you would be asking us to say if it's just a, let's call it a run-of-the-mill infringement or invalidity dispute that arbitrators decided, we would deny jurisdiction over the appeal from a district court confirmation of that arbitration because we'd say this just has no larger implications other than for these parties? I'm not sure I'd go that far, Judge Stark. I think I would say that it would depend on the resolution of those questions and the extent to which those questions raise substantial issues important to the system as a whole. So this, and none of this is terribly clear in my mind. Are you familiar with the 2022 Supreme Court decision, Badgero? I'm not. OK, that's the one that said when we're not going to do the so-called look-through approach in deciding on federal court jurisdiction, this is all at the district court level. It's not a 1295 case. And here, there's no question about federal court jurisdiction, both because this is under Section 203 and because there's diversity, according to the petition. But the court says in that that typically when somebody is coming to court to challenge some aspect of an arbitration decision, even if the arbitration was about true federal law claims like Title VII or something, which I think maybe that case was, by the time it gets to the federal court, the petition to review the case is not going to be a case that's going to be reviewed by the district court. The court to review it is basically a contract matter. You don't look through to see what the causes of action were in the underlying arbitration, which feels like it has something to do with trying to figure out how much would be opened by saying there is jurisdiction here, where your case initiating pleading says what's wrong with what the arbitrators did is that that award is not going to be reviewed. That award is contrary to Brulotte. I don't know whether, I mean, I think that's the area of uncertainty. Yeah, I think that's exactly the point I've been trying to make, Judge Toronto. This is not by any means a look-through case. This is the case in which the petition in front of the district court raised starkly the fact that there is federal law and policy that was undermined by the decision of the tribunal. And I think this court has jurisdiction to review that, if for no other reason than to establish nationwide uniform law, but also in order to determine the extent of the federal policy. And just to go back to a question I was trying to ask before, how would our decision here establish nationwide uniform law since Brulotte comes up in all kinds of regional circuit cases where, properly in regional circuit cases? Because I think at the end of the day, Judge Toronto, the question here is, do Brulotte and Kimball clearly establish that full restitution is the remedy for a Brulotte violation? That is a question that the district court said was undetermined and allows for all sorts of unlawful, quote, means, quote, in order to deplete the Brulotte and Kimball rule. But I think that's the principle that this court would establish and I think should be established from exactly what Brulotte and Kimball told us. That the remedy for a Brulotte violation has to be full restitution of all royalties paid in violation of patent law. And the regional circuits would then follow us on that point if we did. Exactly, Judge Stark. Can I give you a hypothetical? So let's say you enter into a license agreement that you're going to pay a royalty per unit for things covered by a certain patent. And then you make things that you think aren't covered by that patent. And the patent holder goes to arbitration over that. And there's a decision by the arbitrator that they either are or aren't covered. It doesn't matter. That's a determination of patent law because of the determination of whether something is going to infringe that patent or not, which is the basis for claiming that you either should or shouldn't get the royalty. If you go to the district court to argue against or for that award, does that come to us or to the regional circuit? This may be an unsatisfying answer, Judge Hughes, but I think it depends. If the arbitrator's award, for example, was that you don't have to meet all elements of the claim in order to establish infringement. Well, it's not only an unsatisfying answer. It sounds like you're creating a huge mess for us where we're going to get a lot of cases where we're going to have initial disputes about jurisdiction about what's a substantial question of patent law or not. And I don't think this is set up to be that unclear in case by case. I think we need to have a more workable rule. So are run-of-the-mill infringement questions something that are going to be heard from us if they're decided by an arbitrator as supporting the award or not? It is certainly not necessary to accept that principle in order for the court to find it has jurisdiction over this case. I understand that you refuse to answer our hypotheticals. I don't care about the specific facts of this case for the purpose of this hypothetical. I'm worried about an onslaught of appeals from arbitrations and patent cases. I think this court could decline to assert jurisdiction over that kind of run-of-the-mill question that Judge Hughes, you hypothesized. And I don't think the court needs to take jurisdiction, but I think it's a different question here, certainly. Preemption, just real quick. The argument is that you waived it at the arbitration. I think I understand your answer to that about supremacy clause. But I'm concerned it looks like at some stage in the arbitration you were actually relying on state law as the basis for your recovery. I think it was New York unjust enrichment and only later switched to taking the view that state law is actually preempted. So I'm concerned not so much about whether you preserved the argument but whether you actually maybe took the complete opposite side on whether state law is preempted when you were at the panel. No, I think not, Judge Stark. And I think the way this all happened and that preemption was preserved in the context in which the tribunal addressed the remedy for a Brawlatt violation. First, it told the parties that it was relying on contract law to prevent pre-protest restitution. Then after Alkermes sought and received an order saying that the tribunal was not going to further address that issue, the parties didn't brief the New York statute. They didn't address it in the arbitration. I think I got all that. But I'm looking at, for instance, at page appendix 250 where it seems like you were arguing to the tribunal, although I see this is maybe a district court document, but help strike me out on this. It looks like you were arguing that the breaches you say Alkermes committed give rise to an unjust enrichment remedy under state law. Are you not simultaneously relying on state law and telling us that state law is preempted? The state law that was preempted was the law that limits the recovery. But even in front of the tribunal, a court argued, for example, that its claim for refund is, quote, based on Alkermes' Brawlatt violation. And that's at 672. There are plenty of references where it was the federal Brawlatt violation that was the basis for the claim for full restitution. And 672 is just one of them. Thank you. May I turn to why Brawlatt and Kimball established the rule that we were asking the court to? Two minutes, but I thought we've actually talked a fair bit about it, but go ahead. Well, thank you. I appreciate that. I mean, why does Brawlatt require the remedy as opposed to establish the right? And if you don't invoke the right in a timely fashion, Brawlatt just doesn't say what the remedy is. And as long as it doesn't say, then there's no manifest disregard. Well, I think that's what the district court said. Exactly. Why is that wrong? Because if you read Brawlatt and Kimball, you can't come to any conclusion other than the fact that the only way to effectuate the federal principle announced in those cases is to— But where in either of those decisions does it create a right of disgorgement? That was not an issue in front of Brawlatt and Kimball. The parties hadn't paid it. Isn't that a problem for you? I don't think it is, Judge Hughes, because you can't— Because your claim for disgorgement doesn't come from those cases. It's based on those cases, but you have to have some other cause of action that allows you to file a claim for disgorgement. But the disgorgement came, at least according to the tribunal, directly from the Brawlatt violation. It was one sentence that followed the other at 450, I believe, of the record. There's nothing in between. And if you read Brawlatt and Kimball talking about you may not receive post-expiration royalties, all of the prerogatives of a patent expire, and there must be a free-from-all-restrictions use of a patent that's expired. Kimball said that Brawlatt applied the categorical principle that all patent and all benefits from a monopoly must end, that charging a royalty, quote, after expiration is unlawful per se. Brawlatt quoted Scott Paper to the effect that any continuation of the patent monopoly post-expiration, quote, runs counter to the policy and purpose of the patent law. Brawlatt at 31, allowing any royalties post-expiration— But all of that just doesn't quite get over why there isn't a distinction between right and remedy. In much the same way, I guess I've been thinking, that this came up in eBay about injunctions, where the patent owner said in a kind of plausible way, it says right there in Section 154, this is a right to exclude. So I get to exclude, and the Supreme Court said, no, no, no, no. Remedy, whether you get an injunction to exclude, is a different question from the nature of the right. Why is that distinction not an important one for thinking about what the scope is of Brawlatt? I think because, Judge Toronto, if, for example, Kimball at 450 says that you may not receive post-expiration royalties, how can that possibly be effectuated if you're allowed to keep post-expiration royalties? It also allows— You still have to have a cause of action, right? I mean, let's get rid of all this arbitration and stuff because it's complicating. Let's just assume you still have the same license agreement. You didn't agree to arbitration, and you keep paying even though the patents have expired, so you don't have to. And how do you go about getting that back? You either have to find a cause of action in federal court that's going to allow you to do it, or you have to find a cause of action in state court that's going to allow you to seek that remedy. You're not going to file a complaint that doesn't state something that states a claim within either court's jurisdiction. You can't just file copies of Brawlatt and Kimball with the court and say these entitle me to money. But restitution, whether it's a federal remedy—and Norman was the case that a court recited below that provides at least an argument that restitution is the automatic federal remedy for a statute that's voided by Congress. Here, the ability to receive the royalties is something that Brawlatt and Kimball outlaw, and so that is exactly what has to be effectuated by this uniform rule that you may not keep what's been paid. But there are other issues around restitution that you would have to prove in addition to Brawlatt and Kimball. There's all kinds of defenses. You could say you're too late, that you didn't tell people in time, you didn't protest, all those kind of things. So it's not as if Brawlatt and Kimball are self-executing. That's the problem. But in the opinion in the tribunal, they were in fact self-executing, and I think Norman stands for the proposition that it is the normal remedy for a provision of a contract that is deemed illegal under federal law for there to be a restitution. And that cites a Supreme Court authority for that proposition. So I think at the end of the day, you will have all sorts of state laws interfering with whether a party can receive, which Kimball says is unlawful, post-expiration royalties. You also have the situation where parties may not even know about Brawlatt. In Kimball, I think the court said that the parties stumbled upon Brawlatt. You'll have situations where someone may use business pressure to require a licensee to continue to pay royalties. There are all sorts of ways of getting – I think this argument goes way too far and really undermines your case. What you sound to me like saying is any time that royalties are paid in violation of Brawlatt and Kimball, you can get them back. But that would even mean that if you didn't meet the statute of limitations, you would get them back. I think you could certainly provide limitations that are consistent with federal law and policy. But here, the statute –  If your view is you can never, ever keep royalties or payments based on expiration of patent, why is that consistent with applying a statute of limitation? Because that would not be our position, Judge Hughes. There are certainly federal interests that are consistent with state statute of limitations laws. Here, the idea that you must make a formal protest does nothing to support federal law. Okay. Thank you. Thank you. Good morning, Your Honor. Brian Virgis for Alkermes. I expect there will be questions about jurisdiction, and I'm happy to address those. I did want to start with Responsive Judge Stark's question about what was argued below by Accorda, because I think it's evolved considerably, and it's helpful to be precise about it. Accorda at no point below argued that it had a federal right to recover for voluntarily paid past royalties. It was always – And by below, you mean – I'm sorry. I should be precise as well. Yes. Before the arbitrator. They never argued before the arbitrator. Why do we care? Well, because under the manifest disregard standard, that's crucial. Oh, just on the merits. Relevant to the merits, which I took that question to go to. Your point would be you can't – the panel couldn't have – the tribunal couldn't have manifestly disregarded something not argued? By definition, it cannot manifestly disregard something that was not presented. panel for trying to get the money back. Contract grounds, state cause of action grounds, and at least in part, Brulette itself, Brulotte itself, just requires it. I don't agree with the last part of that, because I think the way this was argued, they were arguing that they had a remedy under state law, whether it's breach of contract, quasi-contractual issues, and then they argued that Brulotte and Kimball do not bar the ability to seek a refund. If you look at the particular places where they argued it, you can find it in the summary judgment briefing. This is before the arbitrator at 258 and 259 of the appendix, also at 635 and 637 of the appendix, because this was briefed both on opening motions for summary judgment and oppositions. And I think the reason it came up that way is because, of course, in the context of patent invalidity when you're dealing with a refund, some courts have indicated that as a matter of Federal policy, you cannot seek a refund under an invalidated patent for royalties that you paid previously. And their argument was that that's different. There's no basis under Brulotte and Kimball to prevent us under state law from recovering a refund. But they specifically argued, and this is at page 259 of the appendix, that Brulotte and Kimball did not specifically address damages, did not provide for that right. So that was the context in which they were making this argument. They never argued that there was some Federal common law right. I thought that that was a response to your summary judgment motion. I don't remember. That part seems clear in my mind, but I don't remember what the ground was for your summary judgment motion. We raised a number of arguments, as you indicated, about the contract itself at a refund clause. Carry R is only partial, please. Understood. Understood. They never argued that as a matter of Federal law, whether under preemption or a Federal common law issue, which I don't think they raised until briefing in this Court in a footnote, that they have that sort of right to entitlement. They were relying on state law. They certainly never raised a preemption argument. The supremacy clause argument, the citation of the supremacy clause, is not even in the section of the brief that's addressing the voluntary payment doctrine. So they never argued that that particular doctrine was preempted. They certainly had an opportunity to brief it. I understand the other side is arguing that there was a change of position, how the arbitrators were handling the issue. But the issue was squarely addressed in summary judgment briefing. They briefed it in two different occasions before the arbitrator. They never argued that that doctrine was preempted by Federal law. And just a vague reference somewhere else in the brief to the supremacy clause is not enough to clearly present an issue to the arbitration panel, which is required for manifest disregard. You've been very patient. I'm happy to address jurisdictional questions. Thank you. So we believe the matter should be transferred to the Second Circuit because it does not arise under Federal patent law. Am I right that, with the exception of Zimmer, every one of the Brulat-cited court of appeals cases involves a situation where the invocation of Brulat was not in the case initiating pleading? I think that's right if you were. I mean, there were also declaratory judgment actions. And I understand you usually do the mirror thing. You know, nonetheless, the Third Circuit decision, the Aries trading decision, it comes up in the context of declaratory judgments. But the analysis that the Court engages in there is that it is not a substantial question of patent law undergone dealing with the scope and application of Brulat. And I do think the point Your Honor made that, in terms of considering uniformity, clearly these issues are going to arise in the regional circuits. The other side argued in the briefing that that was a vestige of the past. The decisions that came out since that we briefed in 20HA letters showed that that's not true, that these issues often are going to arise in the circuit. And I think another reason that a decision by this Court on jurisdiction could not establish uniformity goes to the standard of review we're dealing with under the Federal Arbitration Act, where you're dealing with manifest disregard. By definition, cannot be establishing new law that is going to apply prospectively and establish policy going forward, but is necessarily limited to these particular parties and addressing the question of, did the arbitrators go so off the reservation that they... That's not quite right, is it? I mean, the ruling, of course, is limited to the parties, but the reasoning in support of it, it could be that an opinion says it's not manifest disregard of Brulat because Brulat doesn't require this. That's not the ruling they want. No, understood. I take that point, but given the very narrow standard of review that all the Court is doing is, did the arbitrators engage in a good-faith effort to apply the law or did they go rogue, essentially? I mean, that's all manifest disregard is about. Did they act in a way that arbitrators are not supposed to because there is clearly presented, clearly controlling law that they chose not to look at. Your Honor referenced the Badgero decision from Supreme Court before. This is a case that is a recent decision from the Fourth Circuit that was not in the briefing, but I feel like it would be useful to make the Court aware of it. Was that one of the 28J letters? It was not one of the 28J letters. The point is it does not specifically address Brulat, but it is a circuit decision post-Badgero thinking about how manifest disregard challenges whether they raise Federal questions or not. This case is Friedler v. Steiffel-Nicholas, 108 F. 4th, 241. And the Court there. And that's a 9 U.S.C. Chapter 1 case, not a Chapter 2 case? I believe that's correct, yes. But it's dealing with the question of when you have an underlying claim in the arbitration that was a Federal claim, and previously many courts had looked through. Now the Supreme Court in Badgero says you can't do that. Now they're confronted with, well, what happens if someone in the petition is arguing there is a manifest disregard of Federal law? Does that — is that sufficient to create a Federal question? The Fourth Circuit held no, that if that were allowed to create a Federal question, if that were considered to be a substantial Federal issue, you would be, to a significant extent, undoing the result in Badgero, that it would lead to the kind of flood that Judge Hughes indicated, because I don't see any principal distinction between patent infringement cases versus other patent policy cases. The general understanding that the Fourth Circuit had there that we think is correct is that because of the extremely narrow standard of review when you're dealing with manifest disregard, yes, there's a Federal question embedded in some of these instances, so you could say it's necessarily raised under the formulation under Gunn and other cases along those lines, but it can't be considered substantial, because, again, all that is being done in that context is asking whether the arbitrators engage in good-faith effort to be arbitrators rather than going rogue and disregarding law that was clearly presented to them. I take it from what you just said, that you would argue we should be concerned that if we exercised appellate jurisdiction here, that we may be opening ourselves up to a potential flood of appeals from arbitration. I don't, yeah, I mean, I don't see any principled distinction for saying, I mean, I think it would be a fairly odd result. If I understood the other side's position, which in district court litigation often don't come to this court, it suggests that that's a substantial Federal question that in arbitration should come here, but the mine run of patent cases that no one questions in a district court litigation would come to this court involving patent invalidity issues, infringement questions, of course those would come to this court. They're suggesting, well, maybe not. That would be different if you're appealing from an arbitration, and I don't see what could possibly be the principled distinction for drawing that line. I do think there's a principled distinction. If the court is concerned about inviting lots of cases, is the line that the Fourth Circuit adopted, and I understand, you know, the case was not previously briefed, so Your Honors will have to review it, but that just arguing manifest disregard is not itself a basis to establish a substantial Federal question. This may be a very simple question. I just may not understand, but in the district court, was there any dispute about its jurisdiction? Because under the FAA, there needs to be something independent, right? That's right. If you look at page 79 of the appendix, you see there are a couple. Not under Chapter 2. Well, that's exactly what I was going to say. This is under the New York Convention. And you also have diversity. There's also diversity jurisdiction, and under Section 203 of the New York Convention, there is a Federal cause of action. So there clearly is jurisdiction. There's no dispute about that. But if you look at page 79 of their complaint where they're providing the grounds for jurisdiction, they're not invoking the patent laws as the basis for jurisdiction. They're relying on 203 of the New York Convention and diversity as their grounds for jurisdiction. So that's why this is a case where there is Federal court jurisdiction but not jurisdiction in this Court of Appeals. If the Court has no further questions, we'd be delighted if you affirm, but we do think the right result is to transfer. Thank you. We'll transfer. Thank you, Your Honor. Your Honor, it is entirely inaccurate that Federal law was not argued as the basis for restitution in front of the tribunal. A court argued that it is, quote, entitled to recover money. Where are you reading from? 671. It argued that upon a brulette violation, it was entitled to recover monies paid to alchemies that it was not entitled to collect. At 635, there was clear and unequivocal language from the Supreme Court that the remedy for a brulette violation is restitution. Again, at 637, the New York State voluntary payment doctrine can't be applied to payments. Brulette makes illegal, and that allowing alchemies to benefit from any post-exploration royalties would, quote, be a clear violation of public policy. There were plenty of references before the tribunal to restitution being required as a matter of Federal law, and that the whole reason that the parties were seeking a remedy was because of a violation of Federal law under brulette. In the time that you were sitting at the table, have you found anything new to say about, to give us comfort about opening, on the jurisdictional question, about opening the door to rather a lot? I understand the need for a fine line as to when these brulette questions go to the regional circuits and when they're not. I would say, to supplement Your Honor's question earlier, Judge Toronto, that eight of the cases, I think it's eight of the nine cases they cite in their brief about there being no jurisdiction were pre-2012 amendments to Section 1295, when the only place for those counterclaims and offenses could go were to the regional circuits. So those cases really have limited vitality. But this Court has addressed arbitration awards, and under the logical extension of what alchemies is saying is that you would never have a jurisdiction to address an arbitration award. And if there ever was an arbitration award, that is... Well, I mean, if we're never truly definitively deciding a question of patent law because we're reviewing manifest disregard, why isn't that the right answer, that they don't belong here? Because the regional circuits are the ones that review in non-patent cases the confirmation or non-confirmation of arbitration awards all the time. Because I think you could have, Judge Hughes, a patchwork of regional circuits deciding what is clear patent law and what is not. That belongs here. I mean, I see it as almost akin to, like, preliminary injunctions issues where, sure, you're going to opine on a legal issue in the context of deciding whether you get a preliminary injunction or not, but that's not necessarily... In fact, it's usually not binding as a matter of law on the merits of the legal issue. Doesn't the same thing happen in these manifest disregard cases? It's not a question of whether the tribunal got it wrong as a matter of law. It's whether it was manifest disregard, even if they got it wrong. Well, I think two questions here, two answers to that, Judge Hughes. The first is that manifest disregard asks whether the law is clear, and I think that is an issue the district court addressed. Sure, but if the Second Circuit says, no, brulette doesn't require discouragement, that's not binding on us as a matter of patent law. That's not binding on district courts in true patent cases as a matter of patent law in the Second Circuit because it's under a different standard. But that, Judge Hughes, is it guidance at least to people within the Second Circuit deciding to have New York law apply to their licenses, if not guidance to everybody in the nation that they can disregard what brulette and Kimball clearly require, which is that the benefits of a patent end when the patent expires. And the second point that I was going to make, Judge Hughes, is that certainly manifest disregard is one of the standards in which to modify the arbitration award. But there also is the standard in DeRusse in the Second Circuit and Schwartz in the Second Circuit, quoting W.R. Grace in the Supreme Court, where the deference given to the tribunal is not used when a tribunal award is in disregard of a clear federal public policy. And we also would submit that that was argued below, fairly preserved under Medtronics, and is also another basis that this court can modify the arbitration award without even getting into the manifest disregard standard. Thank you. Thank you. Thank you all.